12-0088-cr
*United States v. Lee*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2012

(Argued: May 7, 2013)                    Decided: June 7, 2013)

Docket No. 12-0088-cr

UNITED STATES OF AMERICA,

*Appellee*,

v.

STEPHEN LEE, AKA CHINO,

*Defendant-Appellant*,

KIRK MCNALLY, DERRICK MAGNUS, IAN DAWKINS, DOUGLAS ROSE, ORTAVIA LAMANDEZ AUSTIN, AKA MANDEZ, ANN-MARIE RAMSAY FISHER, PHILLIP HANSON, SIMONE PENROSE, DESMOND CAMPBELL, AKA LEON, TYRONE CAMPBELL, AKA DUCK, ELIJAH EMANUEL BROWN, AKA SHEK.

*Defendants.*[*]

Before: CABRANES, WESLEY, and WALLACE,[†] *Circuit Judges.*

In this appeal we consider two issues relating to the collection of electronic surveillance

abroad: (1) whether the United States District Court for the Eastern District of New York (Allyne R.

Ross, *Judge*) erred in denying the motion of defendant-appellant Stephen Lee, an American citizen, to

---

[*] The Clerk of the Court is directed to amend the official caption to conform to the above.

[†] The Honorable J. Clifford Wallace, of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

1

suppress evidence obtained pursuant to wiretap orders executed against him abroad by a Jamaican law enforcement agency where that agency had a close and ongoing collaboration with its United States counterpart; and (2) whether the District Court erred in denying Lee's motion to compel the application materials and other documentation underlying those foreign wiretap orders. We hold that ongoing, formalized collaboration between an American law enforcement agency and its foreign counterpart does not, by itself, give rise to an "agency" relationship between the two entities sufficient to implicate the Fourth Amendment abroad. We further conclude that the Fourth Amendment's exclusionary rule does not impose a duty upon American law enforcement officials to review the legality, under foreign law, of applications for surveillance authority considered by foreign courts. Lee was not, therefore, entitled to discovery of the wiretap application materials, submitted by Jamaican law enforcement to courts in that nation, underlying the electronic surveillance abroad.

As a result, we hold that the District Court correctly denied Lee's motion to suppress the fruits of the foreign wiretaps and his motion to compel the documentation underlying the foreign wiretap orders. We also conclude that Lee's amended judgment of conviction was supported by sufficient evidence and that the District Court properly allowed certain expert testimony at Lee's trial.

Affirmed.

> JILLIAN S. HARRINGTON, Law Office of Jillian S.
> Harrington, Monroe Township, NJ, *for Stephen Lee.*
>
> SYLVIA S. SHWEDER (Jo Ann M. Navickas, *on the brief*)
> Assistant United States Attorneys, *for* Loretta
> E. Lynch, United States Attorney for the
> Eastern District of New York, *for the United States of America.*

JOSÉ A. CABRANES, *Circuit Judge*:

Defendant-appellant Stephen Lee ("Lee" or "defendant"), an American citizen, appeals from a February 3, 2012 amended judgment of conviction entered by the United States District Court for the Eastern District of New York (Allyne R. Ross, *Judge*). In this appeal we consider: (1) whether the District Court erred in denying Lee's motion to suppress evidence obtained pursuant to wiretap orders executed against him abroad by a Jamaican law enforcement agency where that agency had a close and ongoing collaboration with its United States counterpart; and (2) whether the District Court erred in denying Lee's motion to compel the application materials and other documentation underlying those foreign wiretap orders. We hold that ongoing, formalized collaboration between an American law enforcement agency and its foreign counterpart does not, by itself, give rise to an "agency" relationship between the two entities sufficient to implicate the Fourth Amendment abroad. We further conclude that the Fourth Amendment's exclusionary rule does not impose a duty upon American law enforcement officials to review the legality, under foreign law, of applications for surveillance authority considered by foreign courts. Lee was not, therefore, entitled to discovery of the wiretap application materials, submitted by Jamaican law enforcement to courts in that nation, underlying the electronic surveillance abroad.

As a result, we hold that the District Court correctly denied Lee's motion to suppress the fruits of the foreign wiretaps and his motion to compel the documentation underlying the foreign wiretap orders. We also hold that Lee's amended judgment of conviction was supported by sufficient evidence and that the District Court properly admitted expert testimony at Lee's trial regarding the values and quantities of marijuana generally used by drug traffickers in the course of distribution. Accordingly, we affirm the amended judgment of the District Court.

## I. BACKGROUND

Following a jury trial, Lee was convicted of (1) conspiring to distribute 1,000 kilograms or more of marijuana knowing that it would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 963, 959(c), and 960(b)(1)(G); and (2) conspiring to import 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 963, 960(a)(1). The jury acquitted Lee on two other counts, relating to the importation and distribution of a single load of marijuana in October 2007.

Prior to his trial, Lee was the subject of parallel investigations in the United States and Jamaica. It is undisputed that significant, formalized law enforcement cooperation existed between the two countries in the pursuit of drug trafficking investigations. The two nations signed a Memorandum of Understanding ("MOU") in 2004 to establish a program in which Jamaican law enforcement officers, *inter alia*, "would monitor intercepted phone conversations authorized by Jamaican court orders for purposes of both countries gathering evidence or leads to obtain evidence in narcotics investigations." To this end, the United States agreed to provide surveillance equipment and training to officers for a Jamaica Constabulary Force Narcotics Division Vetted Unit ("VU"). The MOU likewise contemplated that the Jamaican government would provide the fruits of wiretaps to the United States in a format (*i.e.*, on a disc) that the Drug Enforcement Agency ("DEA") could use as evidence in American courts.

In May 2006, the VU began investigating shipments by an international marijuana trafficking organization of which Lee was a member, and eventually seized a large shipment of the drug bound for the United States in September 2006. The VU notified the DEA of this seizure, and the DEA began investigating the same organization as well. In the months that followed, the VU and DEA ran parallel investigations of this organized marijuana trafficking activity, which included shipments originating in Jamaica and arriving at destinations in the New York area. Lee arranged for the clearance of these shipments—which generally attempted to cloak and intersperse thousands of

4

pounds of marijuana among common items of Jamaican produce—through customs, and for their distribution within the United States.[1]

During the course of a subsequent investigation, which took place from October 2006 to February 2009, Jamaican authorities, with authorization from that country's Supreme Court, intercepted wire communications on several telephones in Jamaica. Lee was not a target of this surveillance, but he was captured speaking about drug shipments to individuals in Jamaica who were targets. Some conversations intercepted by Jamaican authorities were used to obtain further electronic surveillance warrants in the United States directed at other members of the marijuana trafficking organization; intercepted conversations were also presented to the grand jury in the proceedings that led to indictments against Lee. Lee sought to suppress the government's recordings of the intercepted conversations at his trial in the Eastern District of New York, claiming that Jamaican authorities had acted as "virtual agents" of the DEA. Relying on our decision in *United States v. Maturo*, 982 F.2d 57, 60 (2d Cir. 1992), the District Court denied Lee's suppression motion, reasoning that "the mere fact that an MOU existed, information was shared and the DEA provided money, training and equipment does not warrant a finding of agency" between the DEA and Jamaican law enforcement.

Lee also moved to compel the government to disclose the application materials submitted by Jamaican law enforcement to courts in that country requesting authority to conduct electronic surveillance. Specifically, Lee sought these materials for the purpose of demonstrating that an agency relationship existed between American law enforcement and its Jamaican counterparts. The government averred that the materials were not in its possession and that, despite diligent efforts, it had been unable to obtain them. Relying on our decision in *United States v. Paternina-Vergara*, 749 F.2d 993, 997-98 (2d Cir. 1984), the District Court reasoned that, even if American and Jamaican law

---

[1] Witnesses at Lee' trial testified that he typically retained as payment 40-60 percent of each shipment that he cleared through U.S. customs.

enforcement officials had jointly investigated Lee, American law enforcement officials would still only be required to make a "good faith" effort to obtain items in the possession of a foreign government and that, on the facts of this case, the government had fulfilled that obligation.[2]  Based on its finding of good-faith efforts, the District Court denied Lee's motion to compel the documentation underlying the Jamaican wiretap applications.

This appeal followed.

## II.  DISCUSSION

On appeal, Lee asserts that the District Court erred by failing to suppress the evidence obtained abroad through Jamaican wiretap orders and, relatedly, that it erred in failing to compel the government to procure and provide the supporting documentation used by the Jamaican law enforcement agents in seeking those orders.  Lee also argues that, even including the evidence obtained through the Jamaican wiretap orders, the evidence presented at trial was insufficient to support his conviction, and he claims that the District Court erred in admitting certain expert testimony regarding the values and quantities of marijuana generally used by drug traffickers.

### A.

We first consider whether the District Court erred by failing to suppress evidence obtained abroad by the VU and other Jamaican law enforcement agencies.  In addressing this claim, we review the District Court's factual findings for clear error, viewing the evidence in the light most favorable to the government, and review the District Court's legal conclusions *de novo*.  *See United States v. Moreno*, 701 F.3d 64, 72 (2d Cir. 2012).

---

[2] Upon a review of the record, we agree with the District Court's assessment that the United States Attorney's Office for the Eastern District of New York diligently, albeit unsuccessfully, pursued Lee's request for documentation underlying the foreign wiretap requests, both within the United States government and with foreign counterparts.  This is not altogether unexpected.  Indeed, we have previously observed, in a different context, that "[t]he complexities of the world being what they are, it is not surprising to discover nations having diametrically opposed positions with respect to the disclosure of a wide range of information."  *United States v. First Nat'l City Bank*, 396 F.2d 897, 901 (2d Cir. 1968).

More than two decades ago, we held that "[w]hen conducted in this country, wiretaps by federal officials are largely governed by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, *see* 18 U.S.C. §§ 2510-2520," but that this statute "does not apply outside the United States." *Maturo*, 982 F.2d at 60. It is also well-established that the Fourth Amendment's exclusionary rule, which requires that evidence seized in violation of the Fourth Amendment must be suppressed, generally does not apply to evidence obtained by searches abroad conducted by foreign officials. *See United States v. Janis*, 428 U.S. 433, 455 n.31 (1976) ("It is well established, of course, that the exclusionary rule, as a deterrent sanction, is not applicable where a private party or a foreign government commits the offending act."). We held as long ago as 1975 that "information furnished [to] American officials by foreign police need not be excluded simply because the procedures followed in securing it did not fully comply with our nation's constitutional requirements." *United States v. Cotroni*, 527 F.2d 708, 711 (2d Cir. 1975). This is so even when "the persons arrested and from whom the evidence is seized are American citizens." *Stowe v. Devoy*, 588 F.2d 336, 341 (2d Cir. 1978). Significantly, in this context, the Fourth Amendment's exclusionary rule does not serve the deterrence purpose for which it was designed because "the actions of an American court are unlikely to influence the conduct of foreign police." *United States v. Valdivia*, 680 F.3d 33, 51 (1st Cir. 2012) (quotation marks omitted); *see also Cotroni*, 527 F.2d at 712 ("The exclusionary rule is intended to inculcate a respect for the Constitution in the police of our own nation. Since it has little if any deterrent effect upon foreign police, it is seldom used to bar their work product." (internal citations omitted)); *United States v. Barona*, 56 F.3d 1087, 1091 (9th Cir. 1995) ("Neither our Fourth Amendment nor the judicially created exclusionary rule applies to acts of foreign officials." (quotation marks and alteration omitted)); *United States v. Mount*, 757 F.2d 1315,

1317-18 (D.C. Cir. 1985) ("[T]he exclusionary rule does not normally apply to foreign searches conducted by foreign officials.").[3]

While suppression is generally not required when the evidence at issue is obtained by foreign law enforcement officials, we noted in *Maturo* that we "ha[ve] recognized two circumstances where evidence obtained in a foreign jurisdiction may be excluded. First, where the conduct of foreign officials in acquiring the evidence is so extreme that [it] shock[s] the judicial conscience . . . [and] [s]econd, where cooperation with foreign law enforcement officials may implicate constitutional restrictions . . . ." 989 F.2d at 60-61 (internal quotation marks and citations omitted); *see also Valdivia*, 680 F.3d at 51. We further explained that "[w]ithin the second category for excluding evidence, constitutional requirements may attach in two situations: (1) where the conduct of foreign law enforcement officials rendered them agents, or virtual agents, of United States law enforcement officials; or (2) where the cooperation between the United States and foreign law enforcement

---

[3] Some commentators have characterized this line of cases as constituting an "international silver platter doctrine." *See, e.g.*, Michael P. Scharf, *Tainted Provenance: When, If Ever, Should Torture Evidence Be Admissible?*, 65 WASH. & LEE L. REV. 129, 152 (2008). This so-called "international silver platter doctrine" is a variant of the more general "silver platter doctrine," which Justice Frankfurter described as follows: "The crux of [the silver platter] doctrine is that a search is a search by a federal official [and subject to the Fourth Amendment's exclusionary rule] if he had a hand in it; it is not a search by a federal official [and not subject to the exclusionary rule] if evidence secured by state authorities is turned over to the federal authorities on a silver platter." *Lustig v. United States*, 338 U.S. 74, 78-79 (1949) (plurality opinion); *see also Janis*, 428 U.S. at 445 (noting that under the silver platter doctrine "federal authorities, if they happened upon a State so inclined, could profit from the State's action by receiving on a silver platter evidence unconstitutionally obtained"). The silver platter doctrine was rejected long ago in the *domestic* Fourth Amendment context. *See Virginia v. Moore*, 553 U.S. 164, 176 (2008) (noting that the difficulties in implementing the silver platter doctrine, as it "imposed more stringent limitations on federal officers than on state police acting independent of them"); *Elkins v. United States*, 364 U.S. 206, 208 (1960) ("In a word, we re-examine here the validity of what has come to be called the silver platter doctrine. . . . [W]e conclude that the doctrine can no longer be accepted."). The so-called *international* silver platter doctrine, however, has outlasted its domestic cousin, in part because it derives independent doctrinal force from the rule of *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921), that the Fourth Amendment only "applies to governmental action" and does not apply to private searches of one private citizen by another. *See* Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 1.8(h) (5th ed. 2012) ("As with the private citizen in this country, the foreign policeman is not directly subject to the restraints of the Fourth Amendment."); *United States v. Busic*, 592 F.2d 13, 23 (2d Cir. 1978). Our holding today is demonstration anew of the substantive viability of the international silver platter doctrine, if not of its moniker.

8

agencies is designed to evade constitutional requirements applicable to American officials." *Maturo*, 989 F.2d at 61 (internal citation omitted).[4]

Lee claims that the close, ongoing, and formalized collaboration between the DEA and VU rendered the latter "virtual agents" of American law enforcement in the context of the parallel investigations. Appellant's Br. 58. We disagree. A review of the record makes clear that, while the United States and Jamaica agreed on several measures designed to facilitate collaboration and cooperation in transnational drug investigations, the Jamaican investigation of Lee was an independent undertaking by a foreign sovereign. Indeed, Jamaican law enforcement officials (1) initiated their investigation into the marijuana trafficking organization with which Lee was associated *before* the DEA commenced its investigation; and (2) did not solicit the views, much less approval, of DEA agents prior to conducting surveillance. Moreover, DEA agents were likewise not involved in the actual interception or translation, from Jamaican dialect, of the conversations at issue. Nor did the DEA make a formal request that Jamaican authorities conduct surveillance on Lee or other members of the marijuana trafficking organization.

While no one factor—or combination of factors—is dispositive, we conclude that the Jamaican law enforcement officials here did not act as "virtual agents" of the United States. Accordingly, we hold that the District Court did not err in denying Lee's motion to suppress evidence gathered from the Jamaican wiretaps.

---

[4] In adopting these standards, we explicitly acknowledged—and declined to adopt—the "joint venture" theory employed by other courts of appeal, to determine whether the conduct of foreign law enforcement officers rendered them "virtual agents" of the United States. *Maturo*, 982 F.2d at 61-62 (citing *United States v. Peterson*, 812 F.2d 486 (9th Cir. 1987)). Although our case law in the intervening period has "implicitly adopted" the "joint venture" theory in the context of suppressing overseas interrogations under the Fifth Amendment's Due Process Clause, *see United States v. Yousef*, 327 F.3d 56, 145-46 (2d Cir. 2003), we have not done so in the context of the Fourth Amendment, *see generally United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990) (noting that the Fourth Amendment "operates in a different manner than the Fifth Amendment"), and Lee has not asked us to do so in this case. Our holding today does not disturb our prior views of the "joint venture" theory.

**B.**

Lee also argues that the District Court erred in denying his motions to compel American law enforcement officials to turn over documents underlying the Jamaican foreign wiretap applications. We review for abuse of discretion the order denying Lee's motion to compel. *See, e.g.*, *United States v. Rigas*, 583 F.3d 108, 125 (2d Cir. 2009). We have repeatedly explained that the term of art "abuse of discretion" includes errors of law, a clearly erroneous assessment of the evidence, or "a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (internal quotation marks omitted).

As an initial matter, we note that Lee was not entitled to these documents under any arguable rule of discovery because these materials were not even within the "government's possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E); *see also id.* 26.2(a);[5] *United States v. Yousef*, 327 F.3d 56, 129 (2d Cir. 2003) ("The Government is not under an obligation to produce prior statements of foreign law enforcement officials that it does not possess."). Indeed, we have made it abundantly clear that, "'even in the course of a joint investigation undertaken by United States and foreign law enforcement officials[,] the most the Jencks Act requires of United States officials is a good-faith effort to obtain the statements of prosecution witnesses in the possession of the foreign government.'" *Id.* (quoting *Paternina-Vergara*, 749 F.2d at 998). The facts of this case do not suggest that there was a "joint investigation" with foreign law enforcement authorities within the meaning of our case law, *see* Part II.A, *ante*, and, even if there had been such an investigation, the District Court properly found that the government had made good-faith efforts to obtain the documents, *see* Part I, *ante*.

---

[5] Rule 26.2 states, in pertinent part, that "[a]fter a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government . . . to produce, . . . any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony." *See* Fed. R. Crim. P. 26.2(a).

Lee claims, however, that "without reviewing th[e] underlying [Jamaican] affidavits and applications, there [is] no way of knowing that [the Jamaican wiretaps] were properly obtained" and permissible under *Maturo*. Appellant's Br. 63. This claim is without merit. As noted, *Maturo* instructs that, in certain limited circumstances, the Fourth Amendment's exclusionary rule can operate to bar the introduction of evidence obtained abroad (1) where the conduct of foreign officials was so extreme that it would shock the judicial conscience, or (2) where the nature of the cooperation "implicate[d] constitutional restrictions." *Maturo*, 982 F.2d at 60-61.[6] These two narrow exceptions, however, do not suggest, much less require, that the government or the District Court had a duty to review the legality, under Jamaican law, of the applications for surveillance authority considered by Jamaican courts. Indeed, even if Jamaican law enforcement officers somehow operated improperly under Jamaican law in obtaining the electronic surveillance of Lee—and the record belies any such suggestion—nothing in this record shows that they operated in a manner that would implicate either of the limited exceptions set forth in *Maturo*.

In sum, Lee has not demonstrated any basis upon which to suppress evidence derived from foreign electronic surveillance because of an alleged failure by American law enforcement officials to secure the documents from a foreign government. Accordingly, the District Court did not err in

---

[6] Although not central to our resolution of the issues in dispute, it bears noting that Lee could also have requested the foreign materials he sought through letters rogatory. As we explained in *Yousef*:

Among other things, [the defendant] could have asked the District Court to issue letters rogatory to obtain documentary evidence in a foreign country pursuant to 28 U.S.C. § 1781. Section 1781(b) permits

(1) the transmittal of a letter rogatory or request directly from a foreign or international tribunal to the tribunal, officer, or agency in the United States to whom it is addressed and its return in the same manner; or

(2) the transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed and its return in the same manner.

*Yousef*, 327 F.3d at 112 n.46. In fact, the government in this case specifically informed Lee of the availability of letters rogatory in a letter to the District Court dated April 19, 2010, which was served on Lee's counsel. Despite this notification, the record does not suggest that Lee ever applied for letters rogatory to request the foreign materials he sought, and—perhaps more importantly—Lee's potential to do so in no way suggests that sending the letters would have induced the Jamaican government to produce the warrant applications.

11

denying Lee's motion to compel the retrieval and submission of documentation submitted to a Jamaican court in support of the wiretap orders executed against him abroad.

## C.

Finally, Lee (1) challenges the sufficiency of the evidence presented to convict him at trial, arguing that "[a]lthough there clearly was an international marijuana conspiracy, the evidence was insufficient to establish beyond a reasonable doubt that [he] was a member in it," Appellant's Br. 37; and (2) claims that the District Court erred in permitting the testimony of a DEA agent who testified as "an expert in the pricing of marijuana and the personal versus distribution use and source countries" of the drug. Appellant's Br. 71 (quotation marks omitted). Specifically with regard to the second point, Lee argues that the DEA agent's testimony should have been excluded because it was irrelevant under Federal Rule of Evidence 402,[7] because it did not assist the trier of fact to understand the evidence, as required by Rule 702,[8] and because it was unfairly prejudicial under Rule 403.[9]

---

[7] Of course, under Rule 402, "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402.

[8] Rule 702 states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

[9] Rule 403 states that:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

"We review *de novo* challenges to the sufficiency of the evidence underlying a criminal conviction," *United States v. Desposito*, 704 F.3d 221, 226 (2d Cir. 2013), but a defendant "bears a heavy burden," *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (quotation marks omitted), because we review evidence on a sufficiency challenge "in the light most favorable to the government and draw[ ] all inferences in favor of the government," *United States v. Henry*, 325 F.3d 93, 103 (2d Cir. 2003). "[W]e will uphold [a] judgment[ ] of conviction if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Coplan*, 703 F.3d at 62 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). Furthermore, we review a district court's decision to admit or exclude expert testimony for an abuse of discretion. *See United States v. Williams*, 506 F.3d 151, 159-60 (2d Cir. 2007); *cf. In re Sims*, 534 F.3d at 132.

Having conducted an independent and *de novo* review of the record, we conclude that the District Court (1) correctly found that the evidence presented at trial was sufficient to convict Lee of the charged conspiracies, and (2) did not err in admitting expert testimony by a DEA agent on the values and quantities of marijuana generally used by drug traffickers.

## CONCLUSION

We have considered all of Lee's arguments on appeal and find them to be without merit. To summarize, we hold that:

(1) Ongoing, formalized collaboration between an American law enforcement agency and a foreign counterpart does not, standing alone, give rise to an "agency" relationship sufficient to implicate the Fourth Amendment abroad.

(2) The Fourth Amendment's exclusionary rule does not impose a duty upon American law enforcement officials to review the legality, under foreign law, of applications for surveillance authority considered by foreign courts.

13

(3) For these reasons, defendant had no basis upon which to suppress evidence that was the fruit of a foreign search or to compel the production of materials submitted to a foreign court and not in the U.S. government's possession.

(4) Defendant's amended judgment of conviction was supported by sufficient evidence.

(5) The District Court properly allowed expert testimony by a DEA agent regarding the values and quantities of marijuana generally used by drug traffickers at defendant's trial.

For the reasons stated above, we **AFFIRM** the District Court's February 3, 2012 amended judgment of conviction.