15-186
*United States v. Aleem*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of March, two thousand sixteen.

PRESENT:
> ROBERT A. KATZMANN,
> > *Chief Judge*,
> ROBERT D. SACK,
> RAYMOND J. LOHIER, JR.,
> > *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

v.                                                  No. 15-186

MOHAMMED A. ALEEM,

> *Defendant-Appellant*.

---

| | |
|---|---|
| For Appellee: | Sean O'Dowd and Rajit S. Dosanjh, Assistant United States Attorneys, *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, NY. |
| For Defendant-Appellant: | Malvina Nathanson, New York, NY. |

Appeal from a judgment of the United States District Court for the Northern District of New York (Sharpe, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Mohammed Aleem appeals a judgment of conviction entered on January 9, 2015, and amended on February 5, 2015, by the United States District Court for the Northern District of New York (Sharpe, *J.*), following a jury verdict finding him guilty of one count of alien smuggling in violation of 8 U.S.C. § 1324(a)(2)(B)(iii). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Aleem's sole argument on appeal is that evidence that was obtained by the Royal Canadian Mounted Police ("RCMP"), and which the government used in his criminal prosecution, should have been suppressed because the RCMP officers were acting as agents of the U.S. Border Patrol and violated his Fourth Amendment rights.

"On appeal from a district court's ruling on a motion to suppress evidence, 'we review legal conclusions de novo and findings of fact for clear error.'" *United States v. Bershchansky*, 788 F.3d 102, 108 (2d Cir. 2015) (quoting *United States v. Freeman*, 735 F.3d 92, 95 (2d Cir. 2013)). We "review *de novo* mixed questions of law and fact." *Id.* Whether foreign law-enforcement officers were acting as agents of the U.S. government is a mixed question of law and fact. *Cf. Cabrera v. Jakabovitz*, 24 F.3d 372, 385–86 (2d Cir. 1994).

We have consistently held that "suppression is generally not required when the evidence at issue is obtained by foreign law enforcement officials." *United States v. Getto*, 729 F.3d 221, 227 (2d Cir. 2013) (quoting *United States v. Lee*, 723 F.3d 134, 140 (2d Cir. 2013)). The logic behind this rule is that, "in this context, the Fourth Amendment's exclusionary rule does not

serve the deterrence purpose for which it was designed because 'the actions of an American court are unlikely to influence the conduct of foreign police.'" *Lee*, 723 F.3d at 139 (quoting *United States v. Valdivia*, 680 F.3d 33, 51 (1st Cir. 2012)).

We have, however, "recognized two circumstances where evidence obtained in a foreign jurisdiction may be excluded. First, where the conduct of foreign officials in acquiring the evidence is so extreme that [it] shock[s] the judicial conscience . . . [and] [s]econd, where cooperation with foreign law enforcement officials may implicate constitutional restrictions . . . ." *Id.* at 140 (quoting *United States v. Maturo*, 982 F.2d 57, 60–61 (2d Cir. 1992)). Under the second circumstance, "constitutional requirements may attach in two situations: (1) where the conduct of foreign law enforcement officials rendered them agents, or virtual agents, of United States law enforcement officials; or (2) where the cooperation between the United States and foreign law enforcement agencies is designed to evade constitutional requirements applicable to American officials." *Id.* (quoting *Maturo*, 982 F.2d at 61). "[T]o render foreign law enforcement officials virtual agents of the United States, American officials must play some role in controlling or directing the conduct of the foreign parallel investigation." *Getto*, 729 F.3d at 230. Contrary to Aleem's suggestion, "[i]t is not enough that the foreign government undertook its investigation pursuant to an American . . . request." *Id.*

Based on the district court's factual findings, which, as noted, are reviewed for clear error, we agree with the district court's legal conclusion that the RCMP officers were not acting as virtual agents of the U.S. government. Briefly, on the night in question, a U.S. Border Patrol civilian employee phoned his Canadian counterpart, informing him that (1) the U.S. Border Patrol had detected a motion-sensor alert on the U.S. side of the border in an area known to authorities on both sides of the border as a human smuggling area, (2) an individual was running

3

southbound, (3) a "drop-off" vehicle was stationary on the Canadian side, and (4) U.S. Border Patrol units were responding to the southbound runner. The U.S. Border Patrol civilian officer never directed the RCMP to stop the drop-off vehicle, much less question its occupant or search its contents. Likewise, on his second call, the U.S. Border Patrol civilian employee merely (1) informed his Canadian counterpart that the southbound runner was in custody and (2) asked for the drop-off vehicle's registration information. The RCMP eventually arrested Aleem, the vehicle's occupant, and handed both him and evidence obtained from his vehicle over to the U.S. Border Patrol. Put simply, the interaction between the U.S. Border Patrol and RCMP constitutes information sharing, not direction or control.

The district court held in the alternative that, "[e]ven if the arrest at issue were effectuated by U.S. law enforcement and analyzed under Fourth Amendment principles and U.S. law, the arrest was supported by probable cause." *United States v. Aleem*, 88 F. Supp. 3d 110, 116 n.8 (N.D.N.Y. 2014). Because we agree with the district court's primary holding, we express no view as to whether the Fourth Amendment, assuming it applied to the circumstances here, would have required probable cause for such an overseas search or seizure, *see In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 553 F.3d 150, 151–52 (2d Cir. 2008) (per curiam), or whether there was or could have been a constitutional violation to begin with, *see generally United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990) (discussing extra-territorial application of the Fourth Amendment).

We have considered the remaining arguments advanced on appeal and find no basis for reversal. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

4