# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1918
_____

United States of America

*Plaintiff - Appellee*

v.

Andrew Scott Pierson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: February 17, 2023
Filed: July 11, 2023

_____

Before SMITH, Chief Judge, STRAS and KOBES, Circuit Judges.

_____

SMITH, Chief Judge.

The United States indicted Andrew Pierson for illegal exportation of firearm parts from the United States to Mexico. Mexican authorities apprehended Pierson while he was living in Mexico. In conjunction with his arrest, Mexican authorities searched both his vehicle and his Mexican residence. They returned Pierson to the United States's border, allowing him to cross the border into the United States where he was arrested by United States authorities. In response to the weapons charges,

Pierson filed a motion to suppress the evidence found in the searches. He argued that the evidence should be excluded because Mexican authorities seized the evidence without a warrant in Mexico. In addition, he argued that statements he made to United States authorities once he entered the United States should be excluded as involuntary. He also filed a motion to dismiss the indictment based on an alleged violation of his due process rights premised on his treatment by Mexican authorities. The district court[1] denied both motions. Pierson proceeded to trial and was found guilty. The district court imposed an upward variance and sentenced him to 144 months' imprisonment. Pierson appeals the denial of his suppression and dismissal motions, as well as the substantive reasonableness of his sentence. We affirm.

## I. *Background*

In 2014, Pierson was indicted for illegally shipping firearms as a felon in the Northern District of Oklahoma, in violation of 18 U.S.C. § 922(g)(1); an arrest warrant was issued. Pierson, operating in Mexico at the time, remained in Mexico once he learned of the warrant and continued his illegal activities. He began ordering firearm parts from the United States, assembling the firearms in Mexico, and providing them to Mexican drug cartels. In December 2018, Mexican authorities apprehended Pierson and brought him to the United States-Mexico border. He crossed into the United States without accompaniment and was taken into custody by United States law enforcement.

While in United States custody, Pierson was read his *Miranda*[2] rights and executed a written *Miranda* waiver. He was then interviewed by an agent from the Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) as well as an agent from the Department of Homeland Security Investigations (HSI). During his

---

[1]The Honorable Brian S. Miller, United States District Court for the Eastern District of Missouri.

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

interview, Pierson said that he had been "picked up," had spent "three or four hours in the back of a pickup truck waiting for you guys," and had been "drug out by the arms." App. A, at 2–5. He also mentioned during the interview that he might be in need of medical attention.

Pierson was charged in a five-count indictment for conspiracy to traffic in counterfeit goods, in violation of 18 U.S.C. § 2320(a)(1) and (a)(2). He was also charged with conspiracy to violate the Arms Export Control Act, in violation of 22 U.S.C. § 2778(b)(2) and (c); 18 U.S.C. § 2; and 22 C.F.R. §§ 121.1, 123.17, and 127.1 along with other charges.[3]

Pierson moved to suppress the evidence seized when his vehicle was searched by Mexican authorities and when he was personally seized along with statements made when he was questioned by United States authorities after crossing the border. He argued that the exclusionary rule should apply to these searches and seizures because they "shocked the judicial conscience" and resulted from a "joint venture" between Mexican and United States authorities. Other circuits have used the "shocked the judicial conscience" and "joint venture standards" when considering the exclusionary rule in relation to foreign law enforcement actions.[4] Additionally,

---

[3]The indictment also charged him with attempt to violate the Arms Export Control Act, in violation of the same provisions; smuggling goods from the United States, in violation of 22 U.S.C. § 2778, 22 C.F.R. parts 120–130, and 18 U.S.C. § 554; and conspiracy to violate the Foreign Narcotics Kingpin Designation Act, in violation of 31 C.F.R. § 598.203, 598.204, and 598.701, 21 U.S.C. §§ 1904 and 1906, and 18 U.S.C. §§ 2 and 3551–3559. Section 598.203 of 31 C.F.R. is now reserved, but it was in effect at the time of the superseding indictment. *See* Narcotics Trafficking Sanctions Regulations and Foreign Narcotics Kingpin Sanctions Regulations, 86 Fed. Reg. 26,667 (May 17, 2021).

[4]*See, e.g.*, *United States v. Rosenthal*, 793 F.2d 1214 (11th Cir. 1986) (applying both doctrines); *United States v. Stokes*, 726 F.3d 880 (7th Cir. 2013) (applying the joint venture doctrine); *United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974)

Pierson argued that his post-*Miranda* interview was involuntary because it was the product of torture and coercion by Mexican authorities and because it was the "fruit of the poisonous tree" of the original illegal searches and seizure.[5]

The district court conducted a hearing on the motions to suppress and dismiss. At the hearing, Pierson testified about his treatment in Mexico. He stated that the Mexican authorities seized and searched him without a warrant. He was picked up by armed men who pulled his t-shirt above his head and put him in the back of a truck in cold weather. He was then driven outside of town to an abandoned building. Outside the building, he saw barrels that he recognized as those a cartel would use to dispose of bodies. He recalled being hit in the back of the head with what he believed to be a gun, knocked unconscious, and dragged on the ground by his legs. He said that the individuals threatened to put him into the barrels, struck him about the head, and provided no food or water. He claimed that they threatened to douse him in cold water and drive him around in the cold. Lastly, he said that he was kicked in the back so hard that it took his breath away.

The district court denied his motion to suppress. The court found that his arrest and the subsequent searches of his vehicle and residence did not "shock the judicial conscience" nor did the record support any "joint venture" between Mexican and United States authorities. Additionally, it found his post-*Miranda* statements made in the United States to have been voluntary.

---

(applying the shocks the conscience doctrine), *abrogated on other grounds by United States v. Verdugo-Urquidez*, 494 U.S. 259, 264–66 (1990); *United States v. Valdivia*, 680 F.3d 33 (1st Cir. 2012) (applying both doctrines).

[5]Pierson additionally argued that the conduct by Mexican and United States officials violated the 1978 Extradition Treaty between the United States and Mexico as well as the Rule of Speciality. Neither of these issues is before us on appeal.

Pierson pleaded guilty to Count II, and the government dismissed the other counts brought against him in the indictment. The district court determined Pierson's total offense level to be 25 with a criminal history category of III. The court determined his Guidelines range to be 70–87 months' imprisonment. The district court then varied upward to 144 months' imprisonment. In support of the variance, it stated:

> I think a variance is appropriate to deter future criminal activity by others who may be thinking about going to Mexico and to reflect the seriousness of the offense here, and to afford adequate deterrence, not just to Mr. Pierson, but to those who might be thinking about doing this in the future.

R. Doc. 294, at 148. This appeal followed.

## II. *Discussion*

Pierson advances five arguments on appeal. First, he argues that the exclusionary rule of the Fourth Amendment should apply to his arrest and searches in Mexico. Second, he argues that his post-*Miranda* statements made in the United States were involuntary. Third, he argues that the district court clearly erred in concluding that he self-surrendered at the United States-Mexico border. Fourth, he contends that the actions taken by both Mexican and United States authorities violated his due process rights. Lastly, he argues that the district court abused its discretion in varying his sentence upward. We address these arguments in turn.

### A. *Exclusionary Rule*

"In an appeal from a district court's denial of a motion to suppress evidence, the court reviews factual findings for clear error, and questions of constitutional law *de novo*. We may affirm the denial of a motion to suppress on any grounds supported by the record." *United States v. Jackson*, 811 F.3d 1049, 1051–52 (8th Cir. 2016) (cleaned up).

"Ordinarily, the Fourth Amendment's exclusionary rule does not apply to foreign searches and seizures, for the actions of an American court are unlikely to influence the conduct of foreign police." *Valdivia*, 680 F.3d at 51 (internal quotation marks omitted); *see also United States v. Janis*, 428 U.S. 433, 459–60 (1976) ("We therefore hold that the judicially created exclusionary rule should not be extended to forbid the use in the civil proceeding of one sovereign of evidence seized by a criminal law enforcement agent of another sovereign."). However, some courts have applied exceptions, allowing application of the exclusionary rule for foreign searches and seizures. There are two main exceptions. First, if "the conduct of foreign police shocks the judicial conscience," then the exclusionary rule may apply. *Valdivia*, 680 F.3d at 51. Second, "where American agents participated in the foreign search, or the foreign officers acted as agents for their American counterparts," the exclusionary rule may apply. *Id*. This circuit has not adopted these exceptions.

## 1. *Shock the Conscience*

Pierson argues that the conduct of Mexican law enforcement shocks the judicial conscience. First, he argues that his treatment at the hands of Mexican authorities amounted to torture. Alternatively, he argues that Mexican law enforcement failed to obtain any warrant or judicial authorization for the searches of his vehicle and residence which suffices to shock the conscience.

Pierson's first conscience-shocking argument fails. In support of his argument, Pierson cites the United Nations Convention Against Torture (CAT),[6] but the CAT

---

[6]The United Nations Convention Against Torture defines torture as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any

provides no ammunition for his suppression claim in a criminal case. He fails to cite any legal precedent of its use for that purpose.

We also note that the district court did not credit his testimony about the conduct he alleged. Pierson's testimony lacked corroboration. Medical records following his return to the United States show evidence of a back contusion, but the injury did not require hospitalization. He was taken to the hospital while in United States' custody for symptoms not related to physical mistreatment but to his obesity. During his interview with United States federal agents, he failed to mention the alleged mistreatment, stating only that he had been picked up, driven outside the city, and had seen the barrels used by the cartels. These corroborated portions of his testimony are not conscience shocking. We defer to the district court's credibility assessment. *Dat v. United States*, 983 F.3d 1045, 1047 (8th Cir. 2020).

Pierson's other argument—that the failure to obtain warrants shocks the judicial conscience—similarly fails. Pierson correctly avers that the search of his vehicle and residence without a warrant could be a violation of Mexican law, as well as a violation of other countries' constitutions. But this is far from sufficient to establish conduct that shocks the judicial conscience.

We decline to adopt the "shocks the judicial conscience" standard. This record provides neither credible facts to warrant its use nor a convincing argument that we should recognize it. The Supreme Court has made clear that the exclusionary rule's

reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. It does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions.

United Nations Convention Against Torture, Art. I, Sec. 1.

-7-

"sole purpose . . . is to deter future Fourth Amendment violations." *Davis v. United States*, 564 U.S. 229, 236–37 (2011) (citing *Herring v. United States*, 555 U.S. 135, 141 (2009); *United States v. Leon*, 468 U.S. 897, 909, 921 n.22 (1984); *Elkins v. United States*, 364 U.S. 206, 217 (1960)). When the conduct at issue is not proscribed by the Fourth Amendment, which applies to United States law enforcement, the exclusionary rule's rationale is absent.

We hold that the district court did not err in declining to extend the exclusionary rule's application to the alleged conduct of the Mexican authorities.

### 2. *Joint Venture*

Pierson's argument that United States law enforcement's interaction with Mexican authorities amounted to a joint venture warranting extension of the exclusionary rule to his seizure and subsequent search in Mexico is unpersuasive. The Seventh Circuit has held that the presence of a law enforcement joint venture could support the suppression of evidence, "if U.S. agents substantially participate in an extraterritorial search of a U.S. citizen and the foreign officials were essentially acting as agents for their American counterparts or the search amounted to a joint operation between American and foreign authorities." *Stokes*, 726 F.3d at 890.

Pierson argues that email communications between Mexican and United States authorities were sufficient to create a joint venture. Even construed most favorably to Pierson, the most that the evidence demonstrates is that United States authorities helped Mexican law enforcement to locate and identify Pierson, solicited a search of Pierson's residence and a mechanic shop associated with him, and requested that he be turned over to United States authorities.

Precedent, as developed by other circuits, however, requires more. Identification and notification of a suspect in a foreign country does not rise to the level of a joint venture. *United States v. Morrow*, 537 F.2d 120, 140–41(5th Cir.

1976). Nor does being present at the scene of the search and being made aware of all plans on arresting, searching, and seizing evidence. *Rosenthal*, 793 F.2d at 1231. Even videotaping parts of the search and seizure does not rise to the level of a joint venture. *United States v. Behety*, 32 F.3d 503, 511 (11th Cir. 1994). Lastly,

> "[t]o render foreign law enforcement officials virtual agents of the United States, American officials must play some role in controlling or directing the conduct of the foreign parallel investigation." Contrary to [Pierson's] suggestion, "[i]t is not enough that the foreign government undertook its investigation pursuant to an American . . . request."

*United States v. Aleem*, 641 F. App'x 96, 97 (2d Cir. 2016) (unpublished summary order) (third and fourth alteration in original) (quoting *Getto*, 729 F.3d at 230).

Unlike the "shock the judicial conscience" standard, the joint venture doctrine inherently contemplates the conduct of United States law enforcement. It, therefore, aligns with the purpose of the exclusionary rule "to deter future Fourth Amendment violations." *Davis*, 564 U.S. at 236–237. Nonetheless, we opt not to, in this case, join the other circuits who have adopted this extension of the exclusionary rule because it is unnecessary to do so on these facts. The evidence in this case simply does not establish a joint venture between Mexican and United States authorities. For a true joint venture to have occurred, United States officials must have been, "controlling or directing the conduct of the foreign parallel investigation." *Aleem*, 641 F. App'x at 97 (quoting *Getto*, 729 F.3d at 230). The record in this case is devoid of such evidence. Accordingly, we affirm the district court's decision to deny exclusion of the evidence based on Pierson's allegation of a joint venture between the United States and Mexican authorities.

## B. *Post*-Miranda *Statements*

The holding of *Miranda* protects criminal defendants from self-incrimination by requiring law enforcement to warn defendants of their rights prior to a custodial

interrogation. It provides that a "defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444. "We review de novo whether the *Miranda* waiver was valid." *United States v. Haggard*, 368 F.3d 1020, 1024 (8th Cir. 2004).

> A waiver is "knowing and intelligent" where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right, and a waiver is "voluntary" where the court can determine that the waiver was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception.

*Thai v. Mapes*, 412 F.3d 970, 977 (8th Cir. 2005). "To determine whether a waiver or a confession was voluntary, a court looks at the totality of the circumstances and must determine whether the individual's will was overborne." *United States v. Syslo,* 303 F.3d 860, 866 (8th Cir. 2002). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. Williams*, 793 F.3d 957, 962 (8th Cir. 2015) (internal quotation marks omitted).

Pierson argues that the conduct of the Mexican authorities was so egregious that he could not "voluntarily, knowingly, and intelligently" waive his *Miranda* rights when read them by United States law enforcement. 384 U.S. at 444. However, the district court did not credit his testimony about the conduct of Mexican authorities. We agree with the district court that the record reflects Pierson made his *Miranda* waiver "voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444.

## C. *Border Surrender*
Pierson claims that he did not actually self-surrender when he crossed the Mexican border into the United States. Pierson's contention that the district court

clearly erred in concluding he self-surrendered is merely an additional attempt to show a joint venture. As Pierson acknowledges, "While this issue is not at the heart of the appeal, it does go toward whether Mexican officials were acting at the direction or request of American officials." Appellant's Reply Br. at 10. Even assuming Pierson did not self-surrender, that fact would not alter the inadequacy of his proof to establish a joint venture under any cited precedent.

D. *Due Process*

Pierson argues that the district court erred in finding that his due process rights were not violated and in denying his motion to dismiss. "In reviewing the district court's denial of a motion to dismiss the indictment for alleged government misconduct, we review the district court's factual findings for clear error and its legal conclusions de novo." *United States v. Louper-Morris*, 672 F.3d 539, 559 (8th Cir. 2012) (quoting *United States v. Pumpkin Seed*, 572 F.3d 552, 557 (8th Cir. 2009)).

Due process violations stemming from an international arrest have been found to invalidate a prosecution by one circuit. In *Toscanino*, the Second Circuit concluded that an abuse of process occurred where a narcotics smuggling suspect was abused, tortured, abducted, and forcibly brought to the United States. 500 F.2d at 270. In that case, United States agents actively participated in the interrogations, and members of the Uruguayan police were actual paid agents of the United States. *Id.* at 269–70. The court there concluded that "a federal court's criminal process is abused or degraded where it is executed against a defendant who has been brought into the territory of the United States by the methods alleged here." *Id.* at 276.

*United States v. Lira* limited the holding of *Toscanino* to those actions that were taken "by representatives of the United States Government." 515 F.2d 68, 70 (2d Cir. 1974). Similar to the joint venture analysis, the focus must be upon the conduct of United States officials. Even if we were to accept the Second Circuit's analysis, which we decline to do today, there is no evidence in this case that United States

officials tortured Pierson, knew of any torture, or paid the Mexican officials who carried it out. Pierson's claim of a due process violation fails.

E. *Variance at Sentencing*

We review a district court's sentence under a deferential abuse-of-discretion standard. *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). First, the court looks to whether the district court committed any procedural error, including failing to calculate the Guidelines range, failing to consider the 18 U.S.C. § 3553(a) factors, treating the Guidelines as mandatory, sentencing on clearly erroneous facts, or failing to adequately explain the sentence. *Id*. Here, Pierson argues that the district court procedurally erred by varying upward based on testimony that the guns he sold had been used to kill people and because the court did not consider its responsibility to avoid sentencing disparities.

"If a district court references some of the considerations contained in § 3553(a), we are ordinarily satisfied that the district court was aware of the entire contents of the relevant statute." *United States v. Gray*, 533 F.3d 942, 944 (8th Cir. 2008) (cleaned up). The record shows that the court did not ignore the § 3553(a) factors. The court highlighted the seriousness of the offense and the need for deterrence. The district court's failure to specifically mention sentencing disparities as a consideration is insufficient to show that the district court did not fulfill its statutory obligation to consider all the relevant § 3553(a) factors. *See United States v. Richart*, 662 F.3d 1037, 1049 (8th Cir. 2011) ("[W]e do not require a district court to categorically rehearse each of the section 3553(a) factors on the record when it imposes a sentence as long as it is clear that they were considered." (internal quotation marks omitted)).

Additionally, the district court, as Pierson notes in his brief, stated, "How do I quantify the damage that was done with your work. I don't think I have heard any testimony about that. . . . I don't think we heard specific testimony today about what

-12-

[the cartels] do." R. Doc. 294, at 127. The district court explicitly acknowledged the absence of record evidence connecting Pierson's crimes to specific injuries or deaths. The court openly doubted its ability to take into account violence done by cartels in varying upward because no evidence had been presented specifically as to gun-related deaths. Pierson focuses on the court's upward variance and assumes the resulting sentence was based on improper considerations. While the district court could have been more clear in its pronouncement, the record does not support a conclusion that the court either legally erred or abused its discretion.

Lastly, Pierson argues that the sentence is substantively unreasonable. As an upward variance, this sentence is not granted a presumption of reasonableness as is granted to those inside the Guidelines range. *See Feemster*, 572 F.3d at 461. However, "it will be the unusual case when we reverse a district court sentence— whether within, above, or below the applicable Guidelines range—as substantively unreasonable." *Id.* at 464 (internal quotation marks omitted). In this case, the district court explained that it was going above the Guidelines range in order to serve as a deterrent to people going to Mexico to assist cartels. The resulting sentence, while significantly above the Guidelines range, was well below the statutory maximum of 240 months and based on applicable § 3553(a) factors. While some judges might have imposed less, Pierson has not shown the sentence imposed was an abuse of discretion.

### III. *Conclusion*

Accordingly, we affirm the decision of the district court.

_____