# United States Court of Appeals
## For the Eighth Circuit
_____

No. 23-2179
_____

United States of America

*Plaintiff - Appellee*

v.

Darion Lemont Thomas

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern
_____

Submitted: January 9, 2024
Filed: April 5, 2024
_____

Before BENTON, ERICKSON, and KOBES, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Darion Thomas entered conditional pleas to two offenses: possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  On appeal, Thomas asserts the district

court[1] erred when it (1) found the search of a backpack was voluntary; (2) determined law enforcement's five-day delay between the seizure of a cell phone and the issuance of the search warrant for it was reasonable; and (3) applied a two-level enhancement under U.S.S.G. § 3B1.1 based on text messages that showed a buyer-seller relationship. We affirm.

## I.    BACKGROUND

On September 3, 2021, law enforcement learned that Thomas, who had outstanding arrest warrants, was at a hospital in Bettendorf, Iowa, with his sick child and the child's mother, Tyliyah Parrow. Surveillance video showed Thomas and Parrow arriving at the hospital, with Parrow carrying a child's backpack and Thomas carrying a child and a cell phone. Later, the video captured Thomas entering and exiting the hospital using the phone while carrying the backpack.

Detective Joseph Dorton learned from the child's treating doctor that the child would be discharged that morning. After Thomas's son finished receiving treatment, six plain-clothed officers and one uniformed officer approached the hospital room to arrest Thomas. Several officers entered the room, quickly brought Thomas to the floor, removed a gun from Thomas's waistband, handcuffed him, and moved him to the hallway. The entire process took three minutes from the time the first officer entered the room.

After Thomas was taken from the room, Detective Dorton spoke with Parrow who was sitting on the hospital bed with her son. He introduced himself in a conversational tone and explained to Parrow that Thomas was being arrested for outstanding warrants. He asked Parrow if she knew whose backpack was on the table at the foot of the bed that was within arms-reach of where Thomas had been sitting. Parrow motioned to herself. Detective Dorton followed up and asked Parrow, "Is that yours?" Parrow nodded and responded, "Yeah." Detective Dorton

---

[1]The Honorable Stephen H. Locher, United States District Judge for the Southern District of Iowa.

then asked, "Is it okay if I search it to make sure there's nothing illegal in there?" Parrow said, "Yeah." Detective Dorton asked one more time, "Is that okay with you?" and Parrow again responded, "Yeah." She then asked for her phone back which officers had taken from Thomas.

Detective Emily Rasche offered to find Parrow's phone and Detective Dorton asked Rasche to remain in the hospital room. When Detective Dorton placed his hand on the backpack, he asked Parrow a third time if she was okay with him searching the backpack, and she responded, "Yeah." Just as Detective Dorton started opening the backpack, he heard what sounded like a scuffle in the hallway. Detective Dorton went into the hallway where Thomas was apparently resisting arrest. When Parrow stood up, Detective Rasche told Parrow to have a seat. Detective Rasche then walked over to the backpack and asked Parrow one more time if she had any issues with the officers searching it. The district court specifically found that "Parrow's response is inaudible, but she appeared to answer in the negative[.]" Detective Rasche then began pulling items out of the backpack, including children's clothing, children's personal care items, and Parrow's purse. Detective Rasche's search of the backpack also yielded 66 pills, which tested positive for methamphetamine, and a small amount of marijuana.

Detective Dorton returned to the room holding Parrow's phone and explained that it might contain evidence of crimes since Thomas was using it. He proposed two options: (1) law enforcement could keep the phone and apply for a search warrant, or (2) Parrow could consent to a download of the phone's contents, which would be quicker and probably result in Parrow getting the phone back that day. Parrow agreed to a download. Detective Dorton tried to help Parrow recover numbers from her phone and offered to arrange for an officer to give her and her son a ride home.

When Parrow asked to hear the options regarding her phone again, the district court found the audio was "somewhat unclear" but "Parrow apparently revoked consent for Dorton to download the contents of the phone." A Bettendorf police

officer then drove Parrow and her son home, and law enforcement retained the phone. A search warrant was issued five days later on Wednesday, September 8, 2021. The Monday of that week had been Labor Day, a federal holiday.

Thomas moved to suppress the evidence obtained from the backpack, arguing Parrow did not have authority over it or, if she had authority, her consent was involuntary due to a coercive environment. Because the warrant to search Parrow's phone was premised on evidence found in the backpack, Thomas contended the evidence obtained as a result of the search warrant was fruit of the poisonous tree. He also argued that the evidence must be suppressed because law enforcement took an unreasonable amount of time to apply for the warrant after seizing the phone. Following a hearing, the district court denied his motion.

Thomas pled guilty to two offenses, reserving his right to appeal the denial of his suppression motion. At the sentencing hearing, the government presented evidence that Thomas supervised a minor in the distribution of controlled substances. The district court applied a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c) and sentenced Thomas to 70 months on the drug offense and 60 months on the firearm offense, to run consecutively, for a total term of imprisonment of 130 months. On appeal, Thomas seeks review of the denial of his suppression motion and application of the two-level enhancement under the Sentencing Guidelines.

## II. DISCUSSION

### a. Motion to Suppress – Search of the Backpack

When evaluating the denial of a motion to suppress evidence, we review factual findings for clear error and legal questions *de novo*. United States v. Jackson, 811 F.3d 1049, 1051-52 (8th Cir. 2016). We review the reasonableness of the government's reliance on an individual's consent to search *de novo*. United States v. James, 353 F.3d 606, 615 (8th Cir. 2003).

-4-

Thomas contends the district court erred in finding the search of the backpack was voluntary. The voluntariness of consent is assessed under the totality of the circumstances. United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990). We consider factors, including the individual's age, intelligence and education, whether she cooperates with police, her knowledge of the right to refuse consent, whether the police threatened or intimidated her, and whether consent occurred in a public or secluded area. United States v. Bearden, 780 F.3d 887, 895 (8th Cir. 2015). Also relevant is whether the individual was intoxicated or under the influence of drugs, whether she relied on promises or misrepresentations made by the police, whether she was in custody or under arrest, and whether the individual objected to the search or stood silently while it occurred. Chaidez, 906 F.2d at 381.

Here, the search took place around 10 a.m. during daylight hours at a hospital. There was no sign that Parrow was intoxicated or impaired. During the interaction, the two plain-clothed officers who spoke with Parrow did not display their weapons, engage in physical intimidation, or make any promises, misrepresentations, or threats. They did not arrest or detain Parrow but instead spoke with her in a conversational manner. Parrow cooperated with the officers, asked questions about the cell phone, did not appear distressed about Thomas's arrest, and watched the search of the backpack without objecting.

After Parrow asserted the backpack was hers, Detective Dorton asked Parrow three times if he could search the backpack and Detective Rasche asked a fourth time right before she started searching the backpack. At no point did Parrow object to the requests to search. While Parrow was not specifically advised by the officers that she could withhold her consent, she later revoked her consent to search her cell phone, indicating Parrow knew she had the right to refuse consent or revoke her consent. Thomas has not shown any of the district court's findings were clearly erroneous or that the findings are insufficient to support the court's determination that Parrow voluntarily consented to the search of the backpack.

### b. Motion to Suppress – Seizure of the Cell Phone

Thomas contends law enforcement's seizure of the cell phone for five days without obtaining a search warrant was unreasonable. The duration of a seizure pending the issuance of a search warrant must be reasonable. United States v. Mays, 993 F.3d 607, 616 (8th Cir. 2021). We measure reasonableness objectively based on the totality of the circumstances, balancing the privacy-related concerns against law enforcement's concerns. Id. at 616-17.

As an initial matter, since Fourth Amendment rights "may not be asserted vicariously," Thomas has to show that he has an expectation of privacy in the cell phone. United States v. Barragan, 379 F.3d 524, 529 (8th Cir. 2004). Relevant factors include ownership of the property, possession and/or control, historical use, ability to regulate access, the totality of circumstances surrounding the search, any subjective expectation of privacy, and the objective reasonableness of that expectation of privacy. United States v. Pierson, 219 F.3d 803, 806 (8th Cir. 2000). While the hospital's surveillance video showed Thomas holding the phone and he regularly used it, the phone belonged to Parrow. Parrow permitted law enforcement to seize it and worked with the detectives to retrieve numbers she needed prior to the seizure. It is questionable whether Thomas has standing to challenge the seizure.

Even assuming Thomas has standing, Thomas has failed to show a Fourth Amendment violation. The seizure did not meaningfully interfere with Thomas's possessory interests because he was in custody during the relevant period. United States v. Clutter, 674 F.3d 980, 984 (8th Cir. 2012). There is also no evidence that Thomas ever requested its return, which further weakens any Fourth Amendment claim. United States v. Johns, 469 U.S. 478, 487 (1985). In addition, smartphones retain data for long periods of time, so any delay between the seizure and search was unlikely to cause the loss of any personal data. United States v. Bragg, 44 F.4th 1067, 1071 (8th Cir. 2022).

In contrast, the government had probable cause to believe the cell phone contained evidence of Thomas's crimes and thus had a strong interest for seizing it. Mays, 993 F.3d at 617. Thomas was being arrested on outstanding warrants, he was a known felon in possession of a firearm, and law enforcement discovered drugs in the backpack in his possession. The district court found that the phone, while in law enforcement's possession for five days before the issuance of the search warrant, was held for only two business days due to the holiday weekend. While we are uncertain that the holiday weekend is legally significant in the analysis, under the facts of this case, including Thomas's questionable standing, his incarceration during the entire time the phone was retained, that the phone was being shared by Thomas with Parrow, and the lack of a clear expectation of privacy, we have little difficulty concluding that Thomas has failed to show the delay was unreasonable.

### c. Sentencing – Two-Level Role Enhancement

Finally, Thomas challenges the district court's application of a two-level enhancement for his role in the offense. We review the district court's factual findings, including its determination of a defendant's role in the offense, for clear error. United States v. Cosey, 602 F.3d 943, 947 (8th Cir. 2010).

Section 3B1.1(c) of the Sentencing Guidelines provides for a two-level increase in a defendant's offense level if he supervised or managed another individual in one or more drug transactions. Thomas both agreed to the application of the enhancement in his amended plea agreement and failed to object to its application in his sentencing memorandum and at the hearing. Even without his admission or the failure to object, the government provided text messages sufficient to demonstrate Thomas supervised a minor in drug transactions. The district court did not clearly err in applying the two-level role enhancement when calculating Thomas's advisory Sentencing Guidelines range.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____