# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3778

_____

United States of America

*Plaintiff - Appellee*

v.

Kenneth Howard Worthy

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: November 21, 2024
Filed: February 21, 2025

_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.

_____

ERICKSON, Circuit Judge.

A jury convicted Kenneth Worthy of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a) and (e), as well as receipt and distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). During the investigation, law enforcement interviewed Worthy and conducted a consensual search of his phone, which uncovered evidence that he had molested his grandson, John Doe. Worthy moved to suppress statements from his interview and evidence

seized from his phone, contending he was coerced into the interview and the cell phone search. The district court[1] denied both motions and Worthy proceeded to trial. Worthy was convicted and sentenced to a 480-month term of imprisonment. When calculating his Sentencing Guidelines range, over Worthy's objections, the district court added eight points to Worthy's criminal history pursuant to U.S.S.G. § 2G2.1(b)(2)(A), (b)(3), (b)(4), and (b)(5). On appeal, Worthy challenges the district court's denials of his motions to suppress, the introduction of a photo, and application of § 2G2.1. We affirm.

## I.    BACKGROUND

Worthy communicated with Gary Kelly on dating and messaging apps. The Southwest Missouri Cyber Crimes Task Force interviewed Kelly in early March 2021, as part of a child exploitation investigation. Kelly told investigators that someone called "Ken" was sexually abusing children and had sent him images. "Ken" also told Kelly that he had sexual contact with his grandson and expressed a desire to have additional sexual contact with the child.

An officer identified "Ken" as Kenneth Worthy using the details provided by Kelly. On March 4, 2021, the officer and a supervisor approached Worthy at his home. The officers explained to Worthy that he had been named in an investigation and asked to speak with him. Worthy agreed to drive to the West Plains Police Department for an interview, and the officers returned to the department. Upon returning to the department, the officers discovered that Worthy had left a voicemail requesting a telephone interview. An officer returned Worthy's call and asked whether Worthy was willing to be interviewed at his home. Worthy agreed.

Later that day, two plain-clothed officers went to Worthy's home. Worthy told the officers that he preferred to speak with them in his nearby detached garage.

---

[1]The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri.

Worthy and the officers walked to the garage, which contained three vehicles. The large garage door (eight to ten feet wide) remained open throughout the officers' visit.

Once in the garage, Worthy was advised of his <u>Miranda</u> rights. While the officers did not specifically inform Worthy that he was free to leave, they did tell him that he could refuse to answer questions and terminate the interview at any time. Although both officers were armed with their department-issued handgun, neither unholstered their weapon while at Worthy's property. One of the officers paced the garage and, at some point, took a phone call outside. The other officer, Task Force Officer Joseph Neuschwander, remained with Worthy.

During the interview, Worthy explained that he had sexual conversations with Kelly. In some of those conversations, Worthy stated, he shared sexually explicit photos of John Doe. He explained that he had created the photos while caring for Doe and described them for Officer Neuschwander. Worthy denied having penetrative sex with Doe, and a subsequent medical examination of Doe did not show signs of physical trauma.

Worthy agreed to a forensic examination of his phone. At some point in the interview, he showed Officer Neuschwander his phone, which prompted the officer to ask, "Mind if I look?" Worthy handed the phone to Officer Neuschwander and stated, "Yeah, you're fine." Soon after, Officer Neuschwander asked Worthy for permission to do a forensic extraction on his phone, and Worthy replied, "Go for it." Officer Neuschwander provided Worthy with a one-page consent form, which he explained would give him permission to conduct a forensic extraction of the phone. The form informed Worthy of his right to refuse consent to the search, among other things. Worthy reviewed and signed the consent form.

A forensic extraction uncovered 10 images depicting child pornography. Some of the photos were consistent with photos Worthy described to Officer

Neuschwander during his interview and were shown to Doe's mother. She identified her son and estimated he was 13 months old when the photos were taken.

Worthy moved to suppress his March 2021 statements, as well as the evidence seized from his cell phone. After an evidentiary hearing, the magistrate judge concluded that Worthy was not in custody while being interviewed in his garage. He further concluded that even if Worthy was in custody, he had knowingly waived his Miranda rights after being fully advised. The magistrate judge also found that Worthy consented to the phone search without coercion. Based on these findings and conclusions, the magistrate judge recommended that the motions to suppress be denied. The district court rejected Worthy's objections, incorporated the magistrate judge's analysis by reference, and adopted the report and recommendation.

At sentencing, the district court calculated an advisory Sentencing Guidelines sentence of 600 months' imprisonment, and sentenced Worthy to a below-Guidelines sentence of 360 months' imprisonment for sexual exploitation of a minor and a consecutive 120 months' imprisonment for receipt and distribution of child pornography. Worthy appeals, asserting four errors: (1) his rights under Miranda v. Arizona were violated; (2) his consent to be interviewed was the product of coercion; (3) a photo was improperly admitted; and (4) due to a miscalculation of his Sentencing Guidelines range, the court imposed a substantively unreasonable sentence.

## II.    DISCUSSION

### A.    *Motions to Suppress*

Worthy contends the district court erred when it denied his motions to suppress because his statements were obtained in violation of Miranda, and he did not give valid consent for a search of his cell phone. When evaluating the denial of a motion to suppress, we review factual findings for clear error and legal questions *de novo*. United States v. Thomas, 97 F.4th 1139, 1142 (8th Cir. 2024). We review

-4-

the reasonableness of the government's reliance on an individual's consent to search *de novo*. Id.

Worthy argues the district court erred when it found he consented to a search of his cell phone. "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). Knowledge of the right to refuse consent is only one factor to be considered. Id.; see also United States v. Johnson, 619 F.3d 910, 918 (8th Cir. 2010) (listing eleven factors). Other factors include the age, intelligence and education of the individual; cooperation with the police; whether the police threatened or intimidated the individual; and where consent occurred—in a public or secluded area. Thomas, 97 F.4th at 1142. Also relevant to the analysis is whether the individual was intoxicated or under the influence of drugs, objected to the search or remained silent, and whether the police made any promises or misrepresentations or placed the individual in custody or under arrest. Id.

While Worthy lacked experience with the criminal justice system, he was presented with a form that plainly explained his right to refuse to consent. Worthy had no disabilities or circumstances that would explain his lack of understanding: he was in his 40s, had a high school education, and showed no signs of intoxication. There is no requirement that an officer also provide a verbal explanation in addition to the written explanation. See United States v. Ortega-Montalvo, 850 F.3d 429, 435 (8th Cir. 2017). In addition, the physical facts surrounding the interview are consistent with voluntary consent. The interview was on Worthy's property, and he chose the location. Cf. Johnson, 619 F.3d at 918 (noting that the defendant "was in his home into which he had invited the officers"). Although two officers were present, "[t]he record lacks any evidence of duress, intimidation, or over-reaching" on their part. United States v. Sanchez, 156 F.3d 875, 878 (8th Cir. 1998).

Even if the officers were not threatening, Worthy contends they made misrepresentations that undermined his ability to consent. But Worthy has not

pointed to any such misrepresentations. No promises of leniency were made by the interviewing officers. United States v. Magallon, 984 F.3d 1263, 1284 (8th Cir. 2021). At most, the officers implied greater knowledge of Worthy's activities than they may have in fact possessed. Such tactics did not render Worthy's consent involuntary. Id.; see Simmons v. Bowersox, 235 F.3d 1124, 1132 (8th Cir. 2001) (noting that officers' misrepresentation to the defendant that his accomplice was confessing did not render consent involuntary or coercive). Nothing in Worthy's interrogation supports his claim that his will was overborn. The district court did not err in denying Worthy's motion to suppress the contents of his cell phone.

Worthy also challenges the district court's determination that he knowingly and voluntarily waived his Miranda rights. We review the district court's conclusion as to the Miranda waiver *de novo* and its factual findings for clear error. United States v. Osorio, 110 F.4th 1089, 1098 (8th Cir. 2024).

An individual who waives his Miranda rights must do so both knowingly and voluntarily.

> A waiver is "knowing and intelligent" where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right, and a waiver is "voluntary" where the court can determine that the waiver was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception.

United States v. Pierson, 73 F.4th 582, 590 (8th Cir. 2023) (quoting Thai v. Mapes, 412 F.3d 970, 977 (8th Cir. 2005)). These concepts require a court to examine the totality of the circumstances. Id.

After Officer Neuschwander recited Worthy's rights under Miranda, Worthy stated that he understood and expressed a desire to continue with the interview. While Worthy contends that he was coerced into abandoning his rights by the officers conducting his interview, his contention is unsupported in the record. The

record reveals that when the officers arrived at his house, Worthy requested to talk to the police in the unattached garage. The large garage door remained open during the interview, mitigating any coercive effect from the fact that one officer sometimes stood near the door. The officers displayed no coercive force by agreeing to conduct the interview at Worthy's preferred location.

The other factors, such as Worthy's personal traits, do not help him establish coercion. Worthy has a high school education. He was in his 40s at the time of the interview. Nothing in the record shows that Worthy did not understand his rights or that he suffered from any impairment that could impact his ability to knowingly and voluntarily waive his rights. While Worthy takes issue with some of Officer Neuschwander's tactics—such as accusing Worthy of lying during the interview, implying that he found Kelly credible, and suggesting that he knew what Worthy had done—these tactics are not enough to overcome a person's free and deliberate choice. As to Worthy's assertion that Officer Neuschwander misrepresented the facts, the record shows that the officer simply described his view of the case. "Absent improper threats, use of physical force, or intimidation tactics, psychological pressure almost never renders a confession involuntary." United States v. Roberts, 975 F.3d 709, 718 (8th Cir. 2020). But even if Neuschwander had mispresented the facts or promised leniency, those facts are merely components in "the totality of the circumstances." Magallon, 984 F.3d at 1284.

The record shows Worthy was advised of his rights under Miranda, expressed an understanding of those rights, and chose to make statements. Because there is insufficient evidence to demonstrate his will was overborne, the district court did not err when it denied Worthy's motion to suppress his interview.

B.    Photograph

Worthy contends the district court abused its discretion when it admitted a photo of him in women's underwear in violation of Rule 404 of the Federal Rules of

Evidence. We review the district court's decision for abuse of discretion. United States v. Reed, 978 F.3d 538, 542 (8th Cir. 2020).

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(b)(a)(1). Such evidence is admissible for "purposes other than proving that the defendant acted in accordance with bad character." United States v. Conner, 924 F.3d 464, 466 (8th Cir. 2019). While Worthy contends the photo was admitted as evidence of prior bad acts, the purpose of its admission was as intrinsic evidence tending to show Worthy's identity.

Evidence is admissible as "intrinsic" to a charged crime if it "is part of the same crime, wrong, or act." United States v. Vaca, 38 F.4th 718, 722 (8th Cir. 2022). That description applies to photos establishing a person's identity. See United States v. Wright, 993 F.3d 1054, 1062 (8th Cir. 2021) (concluding a photo corroborating a carjacker's physical description was intrinsic evidence). The photo at issue connects Worthy to the videos of John Doe, as it depicts Worthy's face alongside a phone with a distinctive case. The photo and images of John Doe were extracted from a phone with the distinctive case, and the same face is visible in a video of John Doe. The photo was relevant to show that Worthy was the creator of the images of John Doe and that he had sent them to Kelly.

Admissible evidence is subject to Rule 403's unfair prejudice balancing test. United States v. Watley, 46 F.4th 707, 714 (8th Cir. 2022). The trial court should exclude relevant evidence if "its probative value is substantially outweighed by a danger of … unfair prejudice." Fed. R. Evid. 403. Here, because the photo was not substantially more prejudicial than probative, the district court did not abuse its discretion when it admitted it. While the photo may have been embarrassing and prejudicial, it is important to remember that "[r]elevant evidence in a child pornography case often is disturbing." United States v. Bartunek, 969 F.3d 860, 863 (8th Cir. 2020). This case is no exception. The photo tended to show that Worthy, rather than Kelly, created the sexually explicit images of John Doe. The prejudice

asserted by Worthy does not substantially outweigh the probative value. See, e.g., id. (concluding that the district court properly admitted photographs of four life-sized dolls dressed in children's underwear as relevant evidence rebutting the defendant's theory that another person was responsible for the images).

## C.    Sentence

Worthy asserts the district court erroneously applied four sentencing enhancements. We review the district court's interpretations and applications of the Guidelines *de novo*, and the factual determinations underlying its decisions for clear error. United States v. Mayer, 63 F.4th 680, 684 (8th Cir. 2023).

The district court applied U.S.S.G. § 2G2.1(b)(2)(A), which pertains to offenses involving "the commission of a sexual act or sexual contact." "Sexual act" includes "contact between the mouth and the penis." 18 U.S.C. § 2246(2)(B). Worthy contends the evidence did not satisfy the definition of "sexual act" or the definition of "sexual contact." Kelly testified that Worthy sent him a video in which John Doe put Worthy's penis in his mouth. In addition, Officer Neuschwander described a photo recovered from Worthy's phone that portrayed contact between a minor's mouth and an erect penis. There was sufficient evidence in the record to apply U.S.S.G. § 2G2.1(b)(2)(A).

Section 2G2.1(b)(3) applies to defendants who "knowingly engaged in distribution." Worthy asserts the enhancement should not have been applied because he denied distributing images of John Doe, Kelly was not a credible witness, and the government failed to introduce evidence of Worthy's messages. Contrary to Worthy's assertions, the jury heard testimony from Kelly that Worthy sent videos of sexual exploitation of John Doe to him. Credibility "determinations are virtually unreviewable on appeal." United States v. Dennis, 106 F.4th 759, 762 (8th Cir. 2024) (per curiam) (quotation marks omitted). The district court did not clearly err when it found Worthy knowingly distributed explicit images of John Doe and applied § 2G2.1(b)(3).

Worthy also objects to the district court's application of U.S.S.G. § 2G2.1(b)(4), which pertains to offenses involving material that portrays sadistic or masochistic conduct, other depictions of violence, or an infant or toddler. Worthy contends there was no evidence he produced sadistic or masochistic images, and no evidence proved John Doe was an infant or toddler when the images were created. Worthy's contention is inconsistent with the record, as there was evidence of John Doe's young age presented at trial.

Finally, Worthy appeals the district court's application of U.S.S.G. § 2G2.1(b)(5), which is applicable if "the defendant was a parent, relative, or legal guardian of the minor involved in the offense, or if the minor was otherwise in the custody, care, or supervisory control of the defendant." The primary consideration is the nature of the relationship. While Worthy contends that no evidence supported the existence of a qualifying relationship with John Doe, the evidence at trial supports the court's finding that Worthy was babysitting his grandson when he filmed the sexually explicit videos. See United States v. Beasley, 688 F.3d 523, 535 (8th Cir. 2012) (noting babysitters exercise care, custody, and supervisory control); see also U.S.S.G. § 2G2.1 Application Note 5(A). The district court did not clearly err when it applied U.S.S.G. § 2G2.1(b)(5).

## III. CONCLUSION

We affirm the judgment of the district court.

_____

-10-